```
 1                    UNITED STATES DISTRICT COURT

 2              FOR THE SOUTHERN DISTRICT OF CALIFORNIA

 3

 4   UNITED STATES OF AMERICA,        )
                                      )
 5        Plaintiff,                  ) No. 05-CR-00343-JM
                                      )
 6        v.                          ) March 2, 2018
                                      )
 7   DAVID CARY MAYER,                ) 9:24 a.m.
                                      )
 8        Defendant.                  ) San Diego, California
     _____)
 9

10                   TRANSCRIPT OF MOTION HEARING
              BEFORE THE HONORABLE JEFFREY T. MILLER
11                   UNITED STATES DISTRICT JUDGE

12   APPEARANCES:

13   For the Plaintiff:      UNITED STATES ATTORNEYS OFFICE
                             By:  ANNE PERRY, ESQ.
14                           880 Front Street
                             San Diego, California  92101
15
     For the Defendant:      FEDERAL DEFENDERS OF SAN DIEGO, INC.
16                           By:  LAUREN WILLIAMS, ESQ.
                             225 Broadway
17                           San Diego, California  92101

18


19   Court Reporter:         CYNTHIA R. OTT, RDR, CRR
                             District Court Clerk's Office
20                           333 West Broadway, Suite 420
                             San Diego, California, 92101
21                           cynthia_ott@casd.uscourts.gov

22


23


24


25   Reported by Stenotype, Transcribed by Computer
```

1      SAN DIEGO, CALIFORNIA, MARCH 2, 2018, 9:24 A.M.
2                          * * *
3           THE COURTROOM DEPUTY:  Calling matter one on calendar
4    05-CR-0343, USA versus David Cary Mayer, set for a motion
5    hearing.
6           MS. WILLIAMS:  Lauren Williams, Federal Defenders, on
7    behalf of Mr. Mayer.
8           MS. PERRY:  Good morning, Your Honor, Anne Perry on
9    behalf of the United States.
10          THE COURT:  Thank you, thank you.  Okay.  And we have
11   probation officer Nicole Roman on the line; is that correct?
12          PROBATION OFFICER:  Yes, you do, Your Honor.
13          THE COURT:  All right.  Very good.  Thank you.
14          This comes before the Court on the motion of Mr. Mayer
15   to terminate supervised release.  Counsel, I've been through
16   all the papers.  I've been through your entire submission here,
17   and I also have received the probation office's recommendation
18   that they would oppose an early termination in this case for
19   reasons they've indicated in a -- in an e-mail memorandum to
20   the Court.
21          Have you received a copy of that?
22          MS. WILLIAMS:  No, Your Honor, I was not provided a
23   copy of that.
24          THE COURT:  You were not provided with a copy of that?
25          MS. PERRY:  I was not either, Your Honor.  I will say

1  for the record that respectfully the United States also
2  opposes.
3           THE COURT: Ms. Roman, Officer Roman.
4           PROBATION OFFICER: Yes.
5           THE COURT: You don't have any quarrel, I assume, with
6  the Court releasing this e-mail chain?
7           PROBATION OFFICER: No, I do not, Your Honor.
8           THE COURT: All right. I think what we'll do is we'll
9  trail this matter, give counsel an opportunity to take a look
10 at this. We can have copies made and then proceed from there.
11 Okay, we'll call the next matter, but trail this one until a
12 little bit later in the morning.
13          Ms. Perry, I know -- are you engaged in another?
14          MS. PERRY: I have Judge Moskowitz's calendar today
15 and it seems that a lot of my colleagues did not want to go, so
16 I do have an awful lot of matters at 10:30, so if there's some
17 way we can work around that.
18          THE COURT: Do you want to come back at a time certain
19 later in the morning, would that help?
20          MS. WILLIAMS: Your Honor, I have an alternate
21 suggestion if you don't mind me interrupting, Your Honor, I
22 would suggest that maybe we could put our positions on the
23 record and potentially follow up with briefing in regard to the
24 letter from probation.
25          THE COURT: I don't think that's necessary.

1    MS. PERRY: Actually I don't either, Your Honor. I
2 can read pretty quickly and as long as I can leave here by
3 about 10:00 that would be very helpful.
4    THE COURT: All right. All right. And Ms. Williams,
5 I'm not being cavalier, because you do recognize the issues
6 here. You do recognize where your client has fallen a little
7 short.
8    You characterize the problems as little blips or
9 shortcomings or minor issues and they may not be that. You can
10 certainly argue the points. Take a look at the memorandum
11 together. Your client is not in custody obviously, and so you
12 can put your heads together, look at it, and then we'll call a
13 matter shortly, okay.
14    MS. WILLIAMS: Thank you, Your Honor.
15    THE COURT: All right. Very good.
16    (Recess taken from 9:27 a.m. to 9:52 a.m.)
17    THE COURTROOM DEPUTY: Recalling matter one on
18 calendar, 05-CR-343, USA versus David Cary Mayer set for a
19 motion hearing.
20    MS. PERRY: Good morning, again, Your Honor, Anne
21 Perry on behalf of the United States.
22    THE COURT: Okay. Very good.
23    MS. WILLIAMS: Lauren Williams on behalf of Mr. Mayer.
24    THE COURT: All right. Ms. Williams, as I indicated,
25 I've been through your papers, do you have anything to add or

1  is there anything you'd like to say in response to what's been
2  communicated to the Court by probation?
3          MS. WILLIAMS: Yes, Your Honor. And I'd just like to
4  say that I do understand and Mr. Mayer does understand the
5  significance of his issues while on supervised release and what
6  I was trying to convey, which it sounds like maybe I haven't so
7  effectively, is that that conduct did not constitute a crime
8  and in some instances did not constitute violations of the
9  terms of the supervised release, although those are issues that
10 are worrisome.
11         But Mr. Mayer did cooperate with the probation
12 officers and has been cooperative for more than a decade and
13 has agreed to any modifications or any further treatment. I
14 just think this shows that he is a very hard-working individual
15 and he's very motivated to not re-offend and, in fact, I think
16 I'd like to read some statistics that I think illustrate that
17 Mr. Mayer is unlikely to re-offend.
18         The largest study of sexual recidivism to date using a
19 three year follow-up period based on 10,000, nearly 10,000 male
20 sex offenders found that sex offenders actually have a lower
21 rate of recidivism than non sex offenders. Further, younger
22 releasees are more likely to recidivate than older. Mr. Mayer
23 is 63 years old.
24         And the greatest predictor of risk reduction is the
25 length of time that a person has lived in the community without

1  re-offending, and Mr. Mayer has had some issues on supervised
2  release, but he hasn't re-offended.  He has not committed any
3  crimes.  He's not had contact with any minors.
4  　　　　　He saw some minors in public, which I know was an
5  issue, but individuals convicted of sexual offenses reach what
6  is called the desistance threshold based on this study meaning
7  that the likelihood of re-offending is low at 10 years of
8  offense free community living.  At this point it's been 10
9  years and four months.  And Mr. Mayer is the best person to
10 know when he needs support, when he needs help.
11 　　　　　He is determined to seek help when he needs it.  I
12 just feel that the offense conduct occurred 13 years ago.  I
13 think he's a different person.  I think if the Court were to
14 consider termination in this case I think it would really mean
15 a lot to him going forward to know that the Court trusts that
16 he will seek help if he needs it, that he has support, that he
17 has worked his hardest for more than a decade.
18 　　　　　He just wants the opportunity to seek new job
19 opportunities.  He does have some savings.  It sounds like he
20 has a pension, but if anything were to happen to him it's my
21 understanding that it would be -- his finances would be
22 difficult.
23 　　　　　He wants to keep working.  He wants to keep working
24 for the next 10 to 15 years.  He's a very intelligent active
25 social individual.  He's very driven.  He spends his time

1  meeting with friends.  Sometimes he takes courses, although
2  recently he had to quit for money reasons.
3           And I just believe that he's really become a very
4  well-rounded driven person and he understands the seriousness
5  of the conduct and understands that there is risk of recidivism
6  but knows when to seek help.
7           So I guess, Your Honor, with that I would just say
8  that I think that the purpose of supervised release in this
9  case has been met after 10 years and four months.  He's done
10 treatment.  He doesn't have any treatment that's left
11 uncompleted.  He doesn't have a need to start, and I just think
12 that the purposes of supervision have been met at this point.
13          THE COURT:  Thank you very much, Ms. Williams.
14          MS. WILLIAMS:  Thank you, Your Honor.
15          THE COURT:  I appreciate your comments.
16          Mr. Mayer, do you have anything you'd like to say?
17          THE DEFENDANT:  First of all, Your Honor, thank you
18 for the hearing and for allowing me in here today.  I am not
19 the person that I was here 10 years ago or 13 years ago.  I
20 feel like I'm doing well.  I've passed several of the
21 polygraphs over the last two or three years.  I've never failed
22 a polygraph when it's come to minors or being around minors or
23 having sexual contacts with minors ever, in the entire time
24 that I've been polygraphed which is every six months.
25          I have a great support system.  My best friend and my

closest friend is someone that I went to graduate school with, who I talk to literally on a daily basis. The letters of support that I believe my attorney submitted are people that I'm in regular contact with all the time.

As she said, I am 62 years old. I am a much different person. I'd like to continue working if possible. One of the issues is that when I apply for positions I'm honest with them and not only do I tell them that I'm a sex offender, but I also tell them I'm still on parole, which means the parole office will be coming in and talking to them.

And the parole office, at least in the northern district of Illinois, insists that any computers I touch have to be monitored including at work. And I have yet to find an employer that says okay. So it continues to complicate things.

And I'm still on registration. I mean I'm still going to be a registered sex offender, so it's always going to be there. So thank you, Your Honor.

THE COURT: All right. Thank you, sir.

Ms. Perry.

MS. PERRY: Your Honor, the Court and I went through this case a long time ago and the position of the United States respectfully is that supervised release not be terminated, we concur with the probation department's position.

This Court in the intervening 10 years that have gone by and other courts in this district have seen another -- a lot

of other cases where the argument is always made, well, my client is not a hands-on offender, so it's not so bad.

Without going into detail, as this court is aware, Mr. Mayer was involved in an organization that promoted this sort of activity. And this, the reason he came out here was for illegal activity. There is no indication that one just simply stops having those urges. I recognize that during the course of his supervision Mr. Mayer has been in groups. He's taking notes, so I'm sure he has a response. But he's been in groups, he's had help, he has support.

But the 12 years of supervised release that was imposed by this court was very thoughtfully reached at by this court in consideration of all the equities, the fact that Mr. Mayer was a well-educated man, that at that time he traveled a lot due to his then position as a flight attendant.

And I think under the circumstances, the Court was correct in imposing the 12 year period of supervised release. It's -- I think, we're at a point where it should be continued and he can just finish it out. I think the nature and circumstances of this offense and the nature and circumstances of Mr. Mayer's conduct warrant that.

THE COURT: Thank you, Ms. Perry. If we have Officer Roman still on the line, Officer, would you like to be heard?

PROBATION OFFICER: Your Honor, I have no updates in regards to Mr. Mayer's supervision. Everything that's detailed

1  in the e-mail is still valid.

2         THE COURT: Okay. There's some indication in

3  information provided to me that there have been a few problems

4  with respect to the polygraph results, that there have been

5  some indications of deception.

6         PROBATION OFFICER: Yes. His last -- so the polygraph

7  results in which he failed, I'm just looking through the notes

8  in the past, in June 2014 is the last test that he did not

9  pass, a polygraph question in which was asking if he had

10 contact with minors.

11        THE COURT: Okay. And then in -- in this information

12 that's been supplied, there's also a reference here that in

13 connection with one of the pre polygraph interviews he stated

14 that he still fantasizes about the consensual sex with teenage

15 boys, well, let's say underage boys.

16        PROBATION OFFICER: Yes, Your Honor.

17        THE COURT: And was that -- was that back in 2014?

18 Was that in connection with the 2014 polygraph or is that more

19 recent?

20        PROBATION OFFICER: No, Your Honor. That was -- I

21 believe that was with the June 2014 polygraph. I do not see

22 any notes stating that it was with a recent polygraph result.

23        THE COURT: There's some -- there's some indication in

24 these materials that the subject of his risky behaviors were

25 discussed with him. Did that discussion take place more

1 recently than 2014 or does that still relate back to the 2014
2 timeframe?
3      PROBATION OFFICER: In regards to the behavior, each
4 time I meet with Mr. Mayer, we do inquire about contact with
5 minors. The risky behavior or the behavior that he exhibited
6 for the polygraph questioning was addressed at that time with
7 him in 2014, yes, Your Honor.
8      THE COURT: Okay.
9      MS. WILLIAMS: Your Honor, and if I may clarify
10 something.
11      THE COURT: Yes.
12      MS. WILLIAMS: So I just want to elaborate, all of the
13 conduct that has occurred, it is what it is, but I do want to
14 add a detail that I don't think that the Court is aware of,
15 some of -- I think with regard to the risky behavior in June
16 2014, I believe the probation office is referring to one
17 occurrence where Mr. Mayer was at a restaurant, but he did have
18 two of his accountability partners with him that day, Ed Mogul
19 and Lily Kornblum, and he was just eating. It was a Saturday
20 and it was around Christmas.
21      So the fact that it sounds like there was an
22 elementary school or middle school or some type of school
23 across the busy intersection, I just think that it's mitigated
24 by the fact that he had two accountability partners with him
25 and that the school was closed.

1          THE COURT:  Okay.
2          MS. WILLIAMS:  So while that was an issue and he did
3  cooperate and agree to a modification at that time, I would
4  like to add those facts.
5          THE COURT:  All right.  Thank you.  Thank you very
6  much.
7          MS. WILLIAMS:  Thank you, Your Honor.
8          THE COURT:  I appreciate your comments.
9          What I'm going to do is this, first of all, Mr. Mayer,
10 I want to commend you on all the work that you have done.  I
11 think you need to hear that and that's something that I can do
12 for you.
13         He -- there's -- there are references here in these
14 materials, overall your compliance with conditions has been
15 good.  You've maintained your sex offender registry
16 requirements in Illinois.  You cooperate with home inspectors,
17 consistently send monthly reports in with supporting documents.
18         You use a laptop computer and computer monitoring has
19 not revealed any inappropriate behavior.  You've completed sex
20 offender treatment programs and you submit to maintenance
21 polygraphs.  You've passed maintenance polygraphs over the
22 prior 12 month period of time.  I know there's a gap between
23 the 12 months leading up now to what was reported back in 2014.
24         And so all of that is very positive and I commend you
25 for it and I think you need to hear that.  Your attorney wanted

1  me to terminate supervised release because it would mean a lot
2  to you, but what I can do at this point is tell you that I
3  think that you're doing well overall and I respect that.
4           I'm a little concerned about what was reported back in
5  2014.  I realize that that's some years ago now in June of
6  2014, and I think perhaps the best thing I can do, balancing
7  out some equities that may exist for you here but realizing the
8  nature and circumstances of the underlying offense and what
9  NAMBLA, the North American Man Boy Love Association, stands for
10 and not only condone but basically advocated in the past,
11 realizing you're no longer a member of that, is taking into
12 account, as I must, the seriousness of the underlying offense.
13          And I did try to very carefully craft the period of
14 time you would be on supervised release.  I don't think it
15 would be appropriate to terminate supervised release at this
16 particular point in time.  I know you're close to that.
17 You're, what, a year-and-a-half away --
18          THE DEFENDANT:  Yes, sir, yes, Your Honor.
19          THE COURT:  -- something like that.  What I would like
20 to do is keep an open mind about this during this last period
21 of supervised release, so that if in fact there is an
22 employment opportunity that comes up for you which you feel is
23 being negatively influenced or impacted by the fact that you're
24 on supervised release, I encourage you to file another motion
25 to terminate supervised release and I would look at that.  I

14

```
 1  would look at it on an expedited basis.
 2          THE DEFENDANT:  Thank you, Your Honor.
 3          THE COURT:  But I think generalized, a generalized
 4  comment that while you're on as you put it parole, but I know
 5  you mean supervised release.
 6          THE DEFENDANT:  I'm sorry, I apologize.
 7          THE COURT:  That while you're on supervised release
 8  you've had to disclose certain information to prospective
 9  employers and you haven't gotten a job is a little too general,
10  it's too nonspecific.  Look, you've been working with the
11  United States Government.  The United States Government gave
12  you a job years ago and so you've been working in a position of
13  some responsibility and so.
14          MS. WILLIAMS:  Your Honor, I can cite to a specific
15  instance if you would like.
16          THE COURT:  All right.  I'd need to see them fully
17  documented.  I'm not going -- I'm not going to -- they'd have
18  to be documented with reliable evidence, with, if necessary,
19  appropriate documentation and statements from employers or a
20  prospective employer regarding the nature of the problem that
21  it would pose for Mr. Mayer if, in fact, supervised release
22  does, in fact, pose a problem.
23          But in any event, I think that's what I'll do.  I'm
24  going to respectfully deny this motion to terminate supervised
25  release at this point in time but without prejudice to you
```

```
 1  renewing a motion if, in fact, the problem surfaces as I've
 2  described it to you, Mr. Mayer.  Is that all right?
 3            THE DEFENDANT:  Thank you, Your Honor, I appreciate
 4  it.
 5            THE COURT:  All right.  Very good.  Good luck to you,
 6  sir.
 7            THE DEFENDANT:  Thank you, again, Your Honor.
 8            THE COURT:  Keep up the good work.
 9            THE DEFENDANT:  Thank you, sir.
10     (The proceedings concluded at 10:09 a.m., March 2, 2018.)
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

16

COURT REPORTER'S CERTIFICATE

I, CYNTHIA R. OTT, Official Court Reporter, United States District Court, Southern District of California, do hereby certify that pursuant to 28 U.S.C. §753 the foregoing is a true, complete and correct transcript of the stenographically reported proceedings had in connection with the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

DATED at San Diego, California, June 14, 2018.

_____/s/ CYNTHIA R. OTT_____
CYNTHIA R. OTT, RDR, CRR